Filed 7/7/21  In re L.D. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re L.D. et al., Persons Coming Under the Juvenile Court Law. | B309852 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP02204A-B) |
| Plaintiff and Respondent, | |
| v. | |
| M.D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Reversed and remanded.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter A. Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father M.D. appeals the juvenile court's order terminating his parental rights to his then 10- and seven-year-old sons, D.D. and L.D.  Father challenges the juvenile court's COVID-19 protocols limiting personal court appearances, arguing they violate state law and his constitutional rights.  Father also contends his due process rights were violated because he did not receive proper notice of the Welfare and Institutions Code section 366.26[1] hearing, and the juvenile court erred by denying his request to continue the hearing after he was prevented from testifying because of his poor remote connection.  He also contends the court never admitted the Department's reports into evidence, and therefore the court's order terminating his parental rights is not supported by substantial evidence.

We grant father's request that we take judicial notice of the superior court's general orders, and to augment the record to include the record from his prior appeal.

The Department concedes the court erred when it failed to continue the hearing, but argues the error was harmless.  Because we cannot find the error harmless, we reverse the order terminating father's parental rights, and remand to the juvenile court for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

We draw the following facts from our earlier opinion affirming the juvenile court's jurisdictional and dispositional orders, *In re L.D.* (Apr. 30, 2019, B291401) [nonpub. opn.].

This family has an extensive history of referrals to the Los Angeles County Department of Children and Family Services

---

[1]     All further statutory references are this this code unless otherwise indicated.

2

(Department). On September 14, 2016, the Department received a report of general neglect after a neighbor observed L.D., then a toddler, crossing the street alone. Mother J.D. was "passed out" and the house was a "disaster." Father, who did not live in the home, went there and picked up the children. The referral was substantiated but closed after father agreed to care for the children and pursue custody in family court.

On October 19, 2017, the Department received an emotional abuse referral based on domestic violence between father and his girlfriend, J.B. Soon after that, the family again came to the attention of the Department in January 2018, following a referral that D.D., the seven-year-old, arrived at school wearing only shorts and a T-shirt, despite the cold winter weather. When J.B. picked up D.D. after school, she appeared to be under the influence of drugs, with an unsteady gait and unclear speech. D.D.'s former school had contacted his current school and reported concerns that father and J.B. were abusing methamphetamines. J.B. told the reporting party that she and father were suffering from "financial difficulties" and were living at a motel.

When a Department social worker visited the family at the motel where they were staying, it was discovered the family was struggling with homelessness. The social worker offered father voluntary family reunification services to help provide some stability to the children, but father did not "want to resort to that just yet."

J.B. admitted to a history of psychiatric hospitalizations, and that she was diagnosed with anxiety and bipolar disorder but was not taking her medications.

Employees at the children's school believed father and J.B. were abusing methamphetamines, based on their appearance and odd behavior, but father and J.B. denied they were using drugs. Father refused to drug test without a court order.

While the Department was investigating the family, father took the children out of school, and the Department was unable to contact him because his phone numbers had been disconnected. The Department obtained a removal warrant for the children, and the children were eventually located after father enrolled them in a different school. They were removed and placed in foster care on April 30, 2018.

At the June 15, 2018 adjudication hearing, the juvenile court sustained allegations based on the October 2017 domestic violence incident between father and J.B.; father's and J.B.'s drug use while caring for the children; and father's failure to provide for the children's basic needs.

At the July 17, 2018 dispositional hearing, the court removed the children from father, ordered that his visitation be monitored, that J.B. have no contact with the children, and that father participate in reunification services, including a full drug and alcohol program with aftercare, weekly random drug testing, and parenting classes. Father appealed, and we affirmed.

Following disposition, father and J.B. continued to struggle with homelessness. Father was not complying with his case plan, insisting that he did not need to drug test or complete a program because he and his girlfriend were not using drugs. He had not enrolled in parenting classes, even though the Department had provided him with referrals for services. He denied the sustained allegations were true, insisted that J.B. was bonded to his

children and would be a part of their lives if father reunified with them.

Initially, father's visitation was sporadic. He had transportation issues, yet he refused to accept bus tokens offered by the Department. Father's visitation became consistent when paternal relatives, such as paternal grandmother, started joining his visits. However, father would miss visits if paternal grandmother was not available, and he did not respond to the Department's efforts to provide him with more visitation. The children's foster mother reported that she did not see a strong bond between father and the children. Father usually let the children play with his phone during visits. During the entire reunification period, father never once graduated to unmonitored visits with the children.

At the September 2019 12-month review hearing, the court terminated reunification services, set a permanency planning hearing for January 22, 2020, and set a permanency planning review hearing for March 25, 2020. The court also ordered the children placed with their maternal grandparents in the State of Washington. The court ordered that father receive weekly monitored Skype visits with the children. Father was personally served with notice of the section 366.26 hearing on October 24, 2019.

The children were placed with maternal grandparents in November 2019. They were thriving in their new placement, and maternal grandparents were committed to adopting them.

As of January 9, 2020, father had not visited or called the children since their placement in Washington the previous November. Maternal grandmother and the former foster mother

reported that father had "not made an effort to establish a meaningful relationship with the children."

The January 22, 2020 permanency planning hearing was first continued to March 2020 so that an adoptive home study could be completed. It was continued again on the court's own motion to May 1, 2020, and then to January 6, 2021, because of the COVID-19 emergency.

During this time, father had limited phone contact with the children. He reported to the court and to the Department that maternal grandparents would not take his calls. Maternal grandparents claimed that father did not call, although they inconsistently reported that he called outside of his scheduled visitation times. Maternal grandparents were reluctant to facilitate video calls, and wanted father's contact to be only by phone, even though the court had ordered Skype visits for father.

Father remained homeless, and there was some confusion about where notices should be served. Some of the Department's reports failed to identify an address for father, noting he was homeless. Others designated a Department of Public Social Services address in El Monte for him. To add to the confusion, father reported different addresses to the Department, and used different addresses for his filings, including an address in San Gabriel, and another address in Rosemead. Nevertheless, father consistently stated his preference to receive notices and reports by email.

On May 25, 2018, father filed a consent to electronic service designating his Gmail address for receipt of service. On July 17, 2018, father filed a consent to receive electronic service, designating a different Gmail address. The Department received multiple emails from father from this new address. Father asked

the Department to use a *third* Gmail address for service of documents, although he never filed a consent to receive electronic service at this address. This third address was also used by father on court filings, such as a notice of intent to file a writ petition.

According to the Department's January 2021 report, the adoption home study had been approved for maternal grandparents, and there were no impediments to adoption. Notice of the hearing was emailed to the third Gmail address father had provided on December 10, 2020, per father's request, and was mailed to the El Monte address. The notice of the hearing included an attachment informing the parties that the courts were conducting remote hearings due to the COVID-19 emergency, and that the parties could call in or participate by WebEx, and provided information for how to do so.

The court held the combined section 366.26 hearing and permanency review hearing on January 6, 2021. The hearing was conducted remotely via WebEx. Father submitted a declaration for the permanency planning hearing which the court admitted into evidence. In his declaration, father summarized the procedural history of the case and argued J.B. was a necessary party to the dependency proceeding. The declaration did not discuss the bond between father and his children.

Father objected to notice for the hearings, arguing notice was sent to an address that he never designated as his address (the El Monte address), and that the notices and report were not sent to his designated email address. Father asked for the hearing to be continued "for proper notice so that he has an opportunity to read the report and fully prepare for his hearing." The court found notice to be proper.

Father also objected that the hearing was not conducted in person, noting that he had requested an in-person hearing, and that because of his homelessness, he was required to testify in a public place.  The court acknowledged that father had requested an in-person hearing but found such a hearing was not possible given the COVID-19 emergency.

Father also requested that the section 366.26 hearing be continued for a contest following a bonding study, so that father could show that the beneficial relationship exception to the termination of parental rights applies under section 366.26, subdivision (c)(1)(B)(i).  The court requested an offer of proof regarding the contest.  Counsel argued the children were bonded to father because of their young age and the amount of time they spent in his custody, and that father had maintained regular visitation until the children were moved to Washington where the maternal grandparents "thwarted" his visitation.

The court stated its view that the offer of proof was insufficient, and that it intended to proceed with the hearing that day, but then granted father's request that he be allowed to testify.  The Department objected, noting that the court had denied the contest.  The court acknowledged, "I did deny the contest.  I'm going to allow [father] to make his statement or answer a few questions now.  I am not setting this for contest in the future.  I'm going to allow him an opportunity to be briefly heard and let his lawyer ask him a minimal amount of questions."

Father's counsel attempted to ask father about his bond with the children, and about his visitation with the children.  Father's responses could not be heard because of a poor phone connection.  After attempting to question father, the court stated

"I don't know what to suggest. I cannot hear him. I want to have an answer for the record. I don't know what else to suggest, [counsel]. I'm assuming your client is going to testify that he is bonded with the children, they are bonded to him. I don't know what kind of contact he's had other than what's in the report which I'm relying on." Father tried to testify further, stating that he visited with his children at least one day per week. But the court could not understand him and stated the court would have to rely upon argument by his counsel rather than father's testimony.

The court, relying on the Department's reports and father's declaration, found that the children were adoptable, father had not maintained regular visitation, and the parental bond exception did not apply. The court never formally admitted the Department's reports into evidence. The court terminated father's parental rights. Father timely appealed.

## DISCUSSION

The juvenile court must ensure that a party appearing by telephone can participate in the hearing with no transmission or reception problems, their statements are audible to all other participants and court staff, and the proceedings remain confidential as required by law. (Cal. Rules of Court, rule 5.531(b)(2)-(4).) We review the denial of a request for a continuance for an abuse of discretion. (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.)

Father was prevented from testifying at the section 366.26 hearing because of his poor phone connection, and the juvenile court made findings and terminated his parental rights without giving father a meaningful opportunity to be heard. The Department concedes the court denied father due process by not

continuing the hearing.  The Department argues the error was harmless because father could not meet his burden to demonstrate the beneficial relationship exception to the termination of parental rights.

We agree the juvenile court abused its discretion by not continuing the hearing so that father could provide clear, intelligible testimony in support of his claimed exception to the termination of parental rights.  We cannot find that the error was harmless under any standard of review.  (*In re J.F.* (2011) 196 Cal.App.4th 321, 336 [discussing harmless error standards of review].)

The beneficial relationship exception to the termination of parental rights applies if termination of parental rights would be detrimental to a child because the parents have maintained regular visitation, and the child would benefit from continuing the relationship.  "The benefit to the child must promote 'the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' "  (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1199.)  The parent must be more than a friendly visitor and must occupy a parental role in the child's life.  (*In re Jason E.* (1997) 53 Cal.App.4th 1540, 1548.)

Here, we do not know what testimony father tried to give, except that he was attempting to testify about the bond between him and his children, and the quality of his visitation.  The Department's reports provided little information about the quality of father's visitation with the children.  There was evidence maternal grandparents were frustrating father's ability to visit the children.  Father had been the custodial parent for these children for over 18 months before they were detained.  On

10

this record, we cannot know whether father may have had a better outcome had he been permitted to testify.

Because we have concluded the court abused its discretion when it failed to continue the hearing to give father a meaningful opportunity to be heard, we need not consider father's other bases for challenging the order terminating his parental rights. Father must provide to the court his current contact information, so that any notice issues may be avoided upon remand.

## DISPOSITION

The order terminating father's parental rights is reversed, and this matter is remanded to the juvenile court for further proceedings consistent with this opinion. Father is ordered to provide the court with his current address for service of process.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


OHTA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11