Filed 4/11/23  In re W.I. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re W.I. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MELANIE D. et al.,<br><br>Defendant and Appellant. | F085204<br><br>(Super. Ct. Nos. JD142142-00, JD142143-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Louie L. Vega, Judge.  (Retired judge of the Kern County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Smith, J. and DeSantos, J.

## INTRODUCTION

Melanie D. (mother) and William I. (father) are the parents of W.I. (born May 2019) and P.I. (born October 2020) (collectively, the children). Mother appeals from the juvenile court's order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] She contends the juvenile court abused its discretion when it denied the request for a continuance of the section 366.26 hearing so that a second Interstate Compact for the Placement of Children (ICPC) home study could be conducted on maternal grandmother Lori H.'s (grandmother) home in Nebraska after her first home study had been denied. Additionally, she argues the Kern County Department of Human Services (department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about the children's Indian ancestry.[2] Father joins mother's appeal.

The department contends the juvenile court did not abuse its discretion when it denied the request for a continuance of the section 366.26 hearing, but concedes ICWA error occurred and agrees to a limited remand for ICWA purposes. For the reasons discussed herein, we accept the department's concession of ICWA error. Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2.

[234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.) In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Referral, Petition, and Detention

On June 12, 2021, the department received a referral on behalf of the children after the parents left them with a friend at a motel. The friend was later kicked out of the motel and left the children with the front desk clerk, who called law enforcement. When the parents returned, they were found in possession of narcotics and drug paraphernalia. The children were taken into protective custody and placed in a licensed foster home.

On June 14, 2021, a social worker spoke to grandmother who, as we mentioned, lived in Nebraska and informed her the children had been placed in protective custody. Mother's four older children and her adult daughter Cheyenne S. lived with grandmother. Grandmother was interested in taking placement of the children, but could not pick them up at the time.

On June 15, 2021, the department filed petitions on behalf of the children pursuant to section 300, subdivision (b) (failure to protect), alleging they had suffered, or were at substantial risk of suffering, serious physical harm or illness due to mother and father's substance abuse problems and their history of unstable housing. The petitions contained Indian Child Inquiry Attachment forms (ICWA-010(A)) indicating a social worker conducted an ICWA inquiry on mother and she gave no reason to believe the children could be Indian children. The parents also filed Parental Notification of Indian Status forms (ICWA-020) indicating they had no Indian ancestry.

On June 16, 2021, the parents appeared at the initial detention hearing. The juvenile court conducted ICWA inquiries on each parent. Mother denied anyone in her family had ever lived on an Indian reservation, received tribal benefits, or been enrolled

3.

in a tribe.  Father stated he did not know if anyone in his family had Indian ancestry.  To his knowledge, no one in his family had ever lived on an Indian reservation, received tribal benefits, or been enrolled in a tribe.  No one in his family had ever mentioned having Indian ancestry.  The juvenile court found ICWA did not apply and instructed the parents to inform their attorneys and the court if at any time they learned they had Indian ancestry.  The hearing was continued to allow the parents to speak with their attorneys about the petition.

On June 16, 2021, a social worker spoke to the parents about the family finding process.  Mother provided minimal information about extended maternal family members, but confirmed her four older children and her adult daughter lived with grandmother in Nebraska.  Father also provided minimal information as to extended paternal family members, but stated his sister and aunt were possibly interested in placement and provided their phone numbers.  He wanted the social worker to also contact an ex-brother-in-law regarding placement.

On June 17, 2021, the juvenile court held a continued detention hearing and ordered the children detained.

## B.    Jurisdiction and Disposition

From June to July 2021, the department was in contact with several extended family members during the family finding process, including maternal grandfather Steven S., paternal great-aunt Marie J., paternal aunt Stephanie I., maternal grandmother Lori, maternal great-aunt Kimberlee S., paternal aunt Katrina M., and maternal cousin Jennifer P.  The department was also in contact with the children's godmother Katrina Q.  Several family members and the children's godmother had expressed interest in placement; however, the children were ultimately placed with paternal aunt Stephanie.  Placement with Stephanie was short lived as she requested the children be removed from her home shortly after they were placed with her.  After the children were removed from

4.

Stephanie's home, they were placed in a foster home. Grandmother in Nebraska and maternal cousin Jennifer from Iowa were requesting ICPC home studies.

On November 15, 2021, the juvenile court held a combined jurisdiction and disposition hearing. Mother and father were both present. The court found the allegations true, ordered the children removed from the parents' care, ordered that the parents be offered reunification services, and authorized the initiation of ICPC home studies for grandmother and Jennifer.

On January 19, 2022, the juvenile court issued an order authorizing an ICPC home study for maternal cousin Jennifer and her husband.

On February 22, 2022, the juvenile court issued an order authorizing an ICPC home study for grandmother.

C.     **Six-Month Review**

On June 29, 2022, mother and father appeared at the six-month review hearing. The court terminated mother and father's reunification services and set placement status review and section 366.26 hearings.

D.     **Placement Status Review**

In September 2022, the department filed a supplemental social study providing an update on the ICPC home studies. Jennifer's application had been approved, but grandmother's application was denied. The Nebraska Department of Health and Human Services (Nebraska DHHS) sent a denial letter stating grandmother had been denied because her name appeared on Nebraska's central registry due to the physical abuse of a child. Apparently, grandmother had initially failed to report three former last names on her application, but the information was later provided. A background check on the additional last names revealed she was on the Nebraska central registry. Additionally, Nebraska DHHS noted three other concerns with her application: (1) she did not report her former last names to the central registry check in California, her prior state of residence, (2) she did not list four household members on a release of information, and

5.

(3) her husband who lived in Arizona had not completed background checks, fingerprinting, or foster care training, and was not present for the home study process. Due to grandmother's placement denial, the department recommended the children be placed with Jennifer in Iowa.

On September 20, 2022, the juvenile court held a placement status review hearing. Mother, father, grandmother, Cheyenne, and Jennifer were present. The department requested to move forward with placement in Iowa with Jennifer. The department was concerned because the section 366.26 hearing was approaching, and it needed time to assess Jennifer for a permanent plan. Mother's counsel was under the impression there was a misunderstanding with Nebraska DHHS and did not believe grandmother was actually on the Nebraska central registry. As such, mother's counsel asked for a renewed ICPC home study for grandmother. Father's counsel was in agreement with mother's counsel. Minor's counsel did not have a preference for who the children were placed with (between Jennifer and grandmother), but asked to move forward with placement with Jennifer because she had already been approved and the section 366.26 hearing was nearing. The court authorized placement with Jennifer and asked the department to resubmit an ICPC home study for grandmother in Nebraska.[3] Additionally, the court continued the hearing for one week to allow the parties to communicate with Nebraska DHHS to determine if the denial was based on erroneous information.

On September 27, 2022, the juvenile court held the continued placement status review hearing. It turned out the information in the denial letter had been correct. Grandmother reported she had been in contact with the ICPC worker in Nebraska who informed her there was an old case against an ex-boyfriend of hers from the nineties. However, she was told her information could be expunged from the Nebraska central

---

[3] Although the juvenile court asked the department to resubmit an ICPC for grandmother in Nebraska, there is no indication one was ever resubmitted or that the court issued a formal order authorizing it.

registry and her ICPC application would then be approved. The court stated that once the information was expunged, they could possibly initiate a new ICPC home study on her behalf. In the meantime, the children would be placed with Jennifer.

**E.      Section 366.26**

The section 366.26 report stated the department had not received additional information regarding ICWA. The children were now residing with Jennifer in Iowa. Jennifer and her husband were committed to adopting the children, and the department recommended terminating parental rights and freeing the children for adoption.

On October 27, 2022, the juvenile court held a section 366.26 hearing. Mother, father, Jennifer, and Jennifer's husband were present. Mother's counsel informed the juvenile court she had received an update on grandmother's ICPC application earlier that day. According to mother's counsel, Nebraska DHHS had reviewed grandmother's file and they believed the child abuse allegations would be expunged from Nebraska's central registry. As a result, mother's counsel requested a new ICPC home study for grandmother. Father's counsel joined mother's request for a new ICPC home study and requested that the section 366.26 hearing be continued. Minor's counsel opposed delaying the section 366.26 hearing, arguing the children were doing well in placement. She said they were "very happy," had adjusted very well, and had begun calling Jennifer and her husband "mom and dad." She argued they needed a permanent home as soon as possible. The department noted that notwithstanding the Nebraska central registry issue, there were other concerns with grandmother's application. The juvenile court did not accept the oral motion for a continuance, did not find good cause to continue the section 366.26 hearing, and did not order a new ICPC home study for grandmother. The court terminated parental rights and freed the children for adoption.

On October 27, 2022, mother and father filed notices of appeal.

## DISCUSSION

**I.**     **The Juvenile Court Did Not Abuse Its Discretion in Denying the Request to Continue the Section 366.26 Hearing**

Generally, "[c]ontinuances are discouraged in dependency cases." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 779.)  However, the juvenile court may continue a hearing if it is not contrary to the child's interests.  "§ 352, subd. (a)[(1)] ['[N]o continuance shall be granted that is contrary to the interest of the minor.  In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.'] " (*Ibid.*)  "Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).)  "We review the juvenile court's decision to deny a continuance for abuse of discretion.  [Citation.]  'Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice.' " (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.)

In the present case, continuing the section 366.26 hearing would have undermined the children's interest in the prompt resolution of their custody status.  Since their removal, the children had spent approximately 15 months in temporary placements.  One month prior to the section 366.26 hearing, they were finally placed in a preadoptive home with Jennifer and her husband.  Although they had only lived with them for one month, the children had adjusted well and the caretakers were committed to adopting them.  According to the children's attorney, the children had begun calling Jennifer and her husband, "mom and dad."  The juvenile court's decision not to continue the section 366.26 hearing so that a new ICPC home study could be initiated on grandmother was not arbitrary or capricious because there was no guarantee she would be approved.  Even if her name was expunged from the Nebraska central registry, Nebraska DHHS cited other

8.

issues with her application—(1) she did not report her former last names to the central registry check in California, (2) she did not list four household members on a release of information, and (3) her husband who lived in Arizona had not completed background checks, fingerprinting, or foster care training, and was not present for the home study process. Therefore, delaying the section 366.26 hearing based solely on speculation that grandmother might be approved for placement was not an abuse of discretion, particularly when these young children had spent a large portion of their lives in temporary placements and they were finally in a stable home with caretakers who were willing to adopt them.

## II. The Juvenile Court and the Department Committed Prejudicial ICWA Error

### A. Legal Principles

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

## B.    Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents,

10.

legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)  Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable."  (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).)  "Further inquiry 'includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;]  [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' "  (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the [department] shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)."  (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).)  "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or

11.

either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

### C. Analysis

#### 1. Summary of ICWA Inquiry

In the present case, the department asked both mother and father if they had Indian ancestry, which they both denied. At the initial disposition hearing, the juvenile court conducted its own inquiry and both parents again denied having Indian ancestry. The court concluded ICWA did not apply. However, there is no indication the department or the court conducted inquiries with any of the extended family members it was in contact with. The record shows the department was in contact with several family members for placement purposes and that some of these family members attended hearings. Mother and father claim that the department's failure to inquire of these extended family members resulted in prejudicial error, and the department concedes.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 77 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

#### 2. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is

'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, *supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department]'s inquiry was proper and adequate within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard.

13.

A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### 3. Department and Juvenile Court Erred

#### a. Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2,

14.

subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the court[ or the department] [has] reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[4]

### b. Juvenile Court's Finding Unsupported by Substantial Evidence

Here, the department inquired only of mother and father, which fell short of complying with the plain language of section 224.2, subdivision (b). "[T]he law demands more than merely inquiring of … [the parents]" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the department does not dispute. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the [department's] inquiry was proper,

---

**4**      All further references to rules are to the California Rules of Court.

adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.)

Under these circumstances, we conclude the department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b) & (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

## D. Prejudice

"Where, as here, the deficiency lies with [a department's] duty of initial inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

16.

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609; accord,

---

5 *People v. Watson* (1956) 46 Cal.2d 818, 836.

*E.C.*, *supra*, 85 Cal.App.5th at p. 154.) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical' " (*E.C.*, at p. 154, quoting *K.H.*, at p. 591), and " 'requiring adequacy as the law directs "is generally the only meaningful[ ] way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized.' " (*E.C.*, at p. 154, quoting *K.H.*, at p. 609.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 155.) Here, the department's inquiry, limited only to mother and father, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, at p. 156, quoting *K.H.*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law

intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

The juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [the children]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 57, quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry provisions set forth in section 224.2, subdivisions (b) and (e), and the documentation provisions of rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the order terminating parental rights is affirmed.