Filed 9/6/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.Y., a Person Coming Under the Juvenile Court Law. | B287849 |
| | (Los Angeles County Super. Ct. No. CK18081) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| D.Y., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joshua D. Wayser, Judge. Reversed and remanded with directions.

Marissa D. Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

The juvenile court placed appellant D.Y. under the legal guardianship of his maternal grandmother in 2001, when he was an infant.  The court retained dependency jurisdiction over D.Y. for the next 16 years, conducting review hearings every six months.  At one such review hearing in late 2017, the court terminated dependency jurisdiction over the objections of D.Y. and grandmother and against the recommendation of the Los Angeles County Department of Children and Family Services (DCFS).  The court denied D.Y.'s request for a continuance to enable DCFS to provide additional information about D.Y.'s educational and orthodontic issues, and to enable D.Y. and grandmother to be present for a contested hearing on terminating jurisdiction.

In this appeal, D.Y. challenges the termination of jurisdiction, which he contends was prohibited by Welfare and Institutions Code section 366.3, subdivision (a) (section 366.3(a))[1] due to grandmother's objections.  In the alternative, he argues that the trial court abused its discretion by denying his request to continue the matter.  We disagree with D.Y.'s interpretation of section 366.3(a), but agree that the court abused its discretion by denying D.Y.'s request for a continuance.  We accordingly reverse and remand for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**

D.Y. is the youngest of his mother's five children.  When he tested positive for cocaine at birth in February 2001, his four older siblings ranging in age from one to 11 already were dependents of the court due to mother's ongoing substance abuse issues.  All four of them lived with their maternal grandmother

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

(grandmother) under legal guardianships.

DCFS detained D.Y. in the prenatal special care unit of the hospital. It filed a section 300 petition alleging that mother's substance abuse and prior neglect of his siblings placed D.Y. at substantial risk of serious physical harm or illness. (§ 300, subds. (b), (j).) It further alleged that mother, who left the hospital shortly after D.Y. was born, failed to provide for D.Y.'s support. (§ 300, subd. (g).) DCFS filed an amended petition in April 2001 that retained these allegations and added several similar allegations pertaining to D.Y.'s alleged father.

The dependency court sustained the amended petition in its entirety in May 2001. It placed D.Y. with grandmother, with whom he had been living since his release from the hospital, and set the matter for a permanent plan hearing under section 366.26.

The court held the section 366.26 hearing in September 2001. The court found that a legal guardianship with grandmother was in D.Y.'s best interest; letters of guardianship were filed the same day. DCFS recommended that the court terminate "all matters of dependency . . . pursuant to Kingap,"[2]

---

[2]"The Kin-GAP [Kinship Guardian Assistance Payment] program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians. In order to receive funding under the program the county welfare agency must enter into a written binding agreement with the relative guardian and dependency jurisdiction must be terminated. (§§ 11386, 11387.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1211, fn.2.) The court retains jurisdiction over children in Kin-GAP arrangements as wards of the legal guardianship, but no longer holds ongoing review hearings. (See §§ 366.3, subd. (a), 366.4, subd. (a); *In re*

3

but grandmother informed the court that she did "not desire Kin-gap." The court concluded that "further DCFS supervision is necessary" and retained dependency jurisdiction over D.Y.

During the next 16 years, the court held review hearings every six months. The issue of whether dependency jurisdiction should be terminated arose intermittently, often at the prompting of the court. Grandmother generally opposed terminating dependency jurisdiction over D.Y. because she felt the family was benefiting from DCFS oversight and services, and she believed she received more financial support for D.Y. from DCFS than she would through Kin-GAP.[3] She expressed a willingness to terminate dependency proceedings only twice, once in 2002 and once in 2013. By the time necessary paperwork had been gathered and completed, however, grandmother changed her mind.

DCFS almost always recommended that dependency jurisdiction and services continue. It most recently recommended that dependency jurisdiction be terminated in 2015, but did not object to keeping the dependency open when grandmother opposed its recommendation at the October 20, 2015 hearing. The court continued the dependency proceedings.

In its next status review report, dated June 7, 2016, DCFS noted that grandmother wanted to keep the case open "because she likes having the support of DCFS staff and programs." It recommended that dependency proceedings for D.Y. "should not be dismissed as the Legal Guardian objects to termination." At the hearing the same day, the court remarked, "Normally I'm concerned when we have legal guardianship in place, about

---

*Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.)
   [3]D.Y. and some of his siblings had special needs.

4

keeping a case open, but here the legal guardian has made a very cogent explanation as set forth in the Department's paperwork for why the RPP [review of permanent plan] continues - - why jurisdiction continues to be appropriate." The court retained dependency jurisdiction.

DCFS again recommended that dependency jurisdiction be continued in December 2016, in advance of the next hearing. The court agreed dependency jurisdiction "remains necessary" in light of issues D.Y. was having at school. The court remarked again that it "normally" would terminate jurisdiction and "may terminate it at the next RPP." In advance of the next hearing in June 2017, however, DCFS did not recommend terminating jurisdiction. Instead, citing section 366.3, subdivision (a), it recommended that dependency "not be dismissed both "due to exceptional circumstances" and because "the Legal Guardian objects to termination."[4] The court retained dependency jurisdiction without comment on its future intentions.

In its next report, filed in advance of the December 20, 2017 hearing, DCFS again recommended keeping the dependency case open because grandmother objected to terminating jurisdiction. DCFS also noted that grandmother had reported that D.Y. needed orthodontic work, and recommended that the court order DCFS to "Explore Special Payment for DCFS Orthodontia services." DCFS represented that it would "follow-up" on the orthodontia issue as well as an issue related to D.Y.'s schooling "at the next home visit in November 2017." It did not

---

[4]As we discuss more fully below, both "exceptional circumstances" and "relative guardian objects" are listed in section 366.3, subdivision (a) as bases on which a juvenile court may retain dependency jurisdiction.

do so, however.

At the hearing, D.Y.'s counsel informed the court that she had been "expecting, or hoping, for a last minute information" regarding some "issues that the social worker kind of kept open," the orthodontia and schooling issues. She requested a continuance to enable DCFS to prepare a more complete report addressing those issues. Counsel for DCFS responded that DCFS was "following through" on the orthodontia issue but acknowledged DCFS should have provided an update on the school. She stated, "I don't know why we don't have a last minute [information] addressing those issues."

The court interjected, telling the parties, "I'm familiar with the school in Torrance that he's going to go to. It's a decent school." DCFS counsel then stated, "It looks like actually, everything is in the works in regards to what he needs and that follow-up information, clearly, would be available in the future for [D.Y.'s counsel]." D.Y.'s counsel again requested to continue the matter due to the "incomplete RPP report by the social worker." In the alternative, she asserted, "If it's not going to be continued, I'm going to set it for a contest."

At that point, the court invited both counsel to go off the record. When the court and counsel returned to the record, the following exchange ensued:

"The Court: We're back on the record. The back and forth to me suggests the need to close the case. The guardianship was put into place long ago. And we've kept the case open to assist the caretaker, and I'm not sure that it's a legitimate basis for continued jurisdiction.

"Services were continued by DCFS, because of the nature of the case, even if we close. So I'm inclined, and I know it will be

6

over minor's counsel objection, to simply close the case.

"[D.Y.'s Counsel]:  Your honor, I would like to be heard about it.

"The Court:  Of course.

"[D.Y.'s Counsel]:  We were off the record.  I feel that this case should not be closed, as the minor is not here.  The legal guardian is not here.  The only information that we have is through the Department.  I feel that the RPP report is incomplete and a very crucial part, which is the dental and education portion.

"I would like to set it for a contested hearing.  I would like the social worker to be present.  I would like [D.Y.] to be present for the contest.

"The Court:  I'm going to respectfully decline that request. I think, if my recollection serves me right, and I could be wrong, at the last hearing in June, or perhaps the prior hearing, it has been my inclination to suggest that we're going to close these cases.

"[DCFS Counsel]:  And I have in my notes, that the court had made that comment multiple times.  That's in my notes.

"The Court:  The problem that I have, and I welcome appellate court guidance on it, not that I'm inviting an appeal, is: I just don't think I have a basis for the jurisdiction, and that we are consensually continuing jurisdiction to assist the family out of the goodness of the Department's heart, minor's counsel, and the court.  But I'm going to close jurisdiction today as to [D.Y.] because the guardianship has long been in place.  And I note minor's objection as to that closing.

"All right.  Thank you."

After the hearing, the court issued an order stating, in

pertinent part, "The Court finds that those conditions which would justify the initial assumption of jurisdiction under WIC section 300 no longer exist and are not likely to exist if supervision is withdrawn and the Court terminates jurisdiction. Jurisdiction is terminated this date. [¶] Jurisdiction is Terminated for Minor. Child has been released to legal guardian(s)."

D.Y. timely appealed.

## DISCUSSION

## I. Termination of Jurisdiction

D.Y.'s argument regarding the termination is, as he puts it, "succinct." Grandmother "objected to the termination of jurisdiction, therefore, it was mandatory that the juvenile court retain jurisdiction." This argument is grounded upon statutory interpretation, an issue we review de novo. (*In re Damian V.* (2008) 163 Cal.App.4th 16, 20.)

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. [Citations.] 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' [Citation.]" (*In re C.H.* (2011) 53 Cal.4th 94, 100.)

The statute at issue is section 366.3(a). It provides, in pertinent part, "Following establishment of a legal guardianship,

8

the court may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4.  If, however, a relative of the child is appointed the legal guardian of the child and the child has been placed with the relative for at least six months, the court shall, except if the relative guardian objects, or upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by Section 366.4."

The first sentence of the portion of section 366.3(a) excerpted above sets forth two paths for the juvenile court to follow after placing a child in a legal guardianship.  It (1) may continue jurisdiction over the child as a dependent child of the juvenile court or (2) may terminate its jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship. The word "may" ordinarily is deemed permissive or discretionary. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143.)  Indeed, the Welfare and Institutions Code expressly provides that "'[s]hall' is mandatory and 'may' is permissive."  (§ 15.)  Thus, the statute by its plain language provides that whether to continue dependency jurisdiction generally is within the juvenile court's discretion. Indeed, California Rule of Court, rule 5.740(a)(4) provides, "When legal guardianship is granted, the court may continue dependency jurisdiction if it is in the best interest of the child, or the court may terminate dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship."  The juvenile court has vast discretion when determining what will be in a child's best interest.  (*In re K.S.* (2016) 244 Cal.App.4th 327,

9

340.)

D.Y. does not dispute this.  He contends that the second sentence of section 366.3(a) restricts the juvenile court's exercise of its discretion in situations like that here, where the child's legal guardian is a relative and the child has been placed with him or her for at least six months.  In such a case, he argues, the statute *requires* the court to retain dependency jurisdiction (or forbids the court from terminating it) "if the relative guardian objects."  This conclusion is not supported by the plain language of the statute or the legislative intent underlying it.

Section 366.3(a) says that "the court shall, except if the relative guardian objects, or upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship."  The mandatory word "shall" forms a verb phrase with the verb "terminate":  the court must terminate jurisdiction.  However, the clause separating the verb phrase contains an exception; the court is *not* required to terminate jurisdiction "if the relative guardian objects, or upon a finding of exceptional circumstances." The question here is what the court is permitted do in those cases.

The plain language of the second sentence does not resolve the question.  It does not, as D.Y. argues, say that the court *shall not* terminate jurisdiction when one of the exceptions applies.  It says only that the court shall terminate jurisdiction under some circumstances, and is silent as to what it should do in others. We accordingly look to the rest of the statute for guidance.

The first sentence of the relevant portion of section 366.3(a), which establishes the decisional parameters for the court, suggests the matter returns to the court's discretion.

According to that sentence, the court may terminate dependency jurisdiction, or it may choose to retain dependency jurisdiction, as the best interest of the child dictates. (See Cal. Rules of Court, rule 5.740(a)(4).) Interpreting the statute in this fashion gives meaning to both relevant sentences of section 366.3(a). The first sentence vests vast discretion in the court to select between two jurisdictional options, while the second clarifies the limited circumstances in which that discretion is restricted. (See *In re Grace C.* (2010) 190 Cal.App.4th 1470, 1475 [finding court had discretion to terminate dependency jurisdiction when mother alleged "exceptional circumstances"].) Interpreting the second sentence as D.Y. advocates would render the first sentence superfluous whenever a child has been placed in a legal guardianship with a relative for at least six months: the court simply would have no discretion to act in the child's best interest if the legal guardian objected to terminating jurisdiction for any reason.

More importantly, restricting the trial court's discretion in the fashion D.Y. suggests—at the behest of the legal guardian, and without consideration of the child's best interest—would undermine the juvenile court's "special responsibility to the child as *parens patriae.*" (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.) The overarching purpose of the Welfare and Institutions Code is "to provide protective services *to the fullest extent deemed necessary by the juvenile court* . . . to insure that the rights or physical, mental or moral welfare of children are not violated or threatened by their present circumstances or environment" (§ 19 ["Purpose of code"] (emphasis added)), not to delegate that responsibility to the child's legal guardian. Similarly, the purpose of the Code as it relates to dependent children is "to

11

provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2 ["Purpose of chapter"].) This goal may not be realized where the court is unable to consider a child's best interest and overrule a guardian's objection when deciding whether to terminate dependency jurisdiction. A trial court may not even delegate the authority to determine whether visitation occurs to a guardian (*In re Grace C.*, supra, 190 Cal.App.4th at p. 1478); it would be patently unreasonable to require it to delegate the more fundamental question of the nature of its jurisdiction to a child's legal guardian.

D.Y.'s interpretation of section 366.3(a) rests entirely upon *In re Joshua S.* (2003) 106 Cal.App.4th 1341 (*Joshua S.*).[5] *Joshua S.* arose after the juvenile court terminated dependency jurisdiction over children who were placed in a legal guardianship with their indigent maternal grandmother who lived in Canada. (See *id.* at p. 1343.) The children argued that the juvenile court abused its discretion by terminating jurisdiction without considering how the cancellation of financial assistance from DCFS would affect the children's best interests.

---

[5]D.Y. also purports to rely on similar language in a subsequent appellate opinion in the same case, *In re Joshua S.* (2005) 131 Cal.App.4th 1307, 1316. That opinion was depublished under former California Rules of Court, rule 8.1115(e) when the Supreme Court granted review and subsequently reversed the appellate court without addressing section 366.3(a) in *In re Joshua S.* (2007) 41 Cal.4th 261. Citing and relying upon an unpublished opinion is a violation of California Rules of Court, rule 8.1115(a).

12

(See *id.* at pp. 1350, 1354.)

In considering and ultimately agreeing with this argument, the appellate court briefly discussed section 366.3(a). After quoting the second sentence at issue here, the court stated, "Thus, according to the plain language of section 366.3(a), the court *must* retain jurisdiction where the relative guardian objects to termination and may elect to retain jurisdiction where it finds exceptional circumstances, which, pursuant to [former] California Rules of Court, rule 1466(a) [now rule 5.740(a)] may be established by a finding that the best interests of the child would be served by continued jurisdiction." (*Joshua S.*, *supra*, 106 Cal.App.4th at p. 1353.) Aside from referring to the statute's "plain language," the court did not explain the rationale behind its statutory interpretation. (*Ibid.*) The court's interpretation also was not necessary to its resolution of the issues; it was dicta rather than a holding.

Because *Joshua S.* is a decision of a court of equal jurisdiction rather than superior jurisdiction, we are not obligated to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *Henry v. Associated Indemnity Corp.* (1990) 217 Cal.App.3d 1405, 1416.) We choose not to do so. We find our independent review of the statutory language and purpose of section 366.3(a) more persuasive than the limited analysis set forth as dicta in *Joshua S.* We accordingly reject D.Y.'s contention that section 366.3(a) and *Joshua S.* obligated the juvenile court to retain dependency jurisdiction in this case.[6]

---

[6]D.Y. does not argue that the juvenile court abused its discretion in terminating dependency jurisdiction; he argues only that the trial court *lacked* such discretion. We accordingly express no opinion on whether the trial court appropriately

## II.    Denial of Continuance

In the alternative, D.Y. argues that the juvenile court abused its discretion by denying his counsel's request for a continuance.  He asserts that the request was "extremely reasonable and necessary so that a sufficient DCFS report could be submitted and to give [D.Y.] and his [grandmother] the opportunity to appear in court given the juvenile court's inclination to terminate jurisdiction."  He further asserts that the juvenile court should have considered "how surprising it would be to [grandmother] and [D.Y.] when they discovered that his case was closed without warning or notice and in light of the unresolved efforts to secure orthodontia funding and lack of independent living skills services."

We review the juvenile court's decision to deny a continuance for abuse of discretion.  (*In re Karla C.* (2003) 113 Cal.App.4th 166, 180.)  "Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice."  (*Ibid.*)  We agree with D.Y. that the trial court abused its discretion here.

Although as a general matter continuances are discouraged in dependency cases, they may be granted upon a showing of good cause. (§ 352, subd. (a); *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604; Cal. Rules of Court, rule 5.550(a).)  Good cause was present here in two respects.  First, the status report before the court was missing important information the social worker had indicated would be forthcoming.  With only a report that even DCFS's counsel conceded was incomplete, the juvenile court did not have a full picture of the circumstances or what might be in

exercised its discretion in favor of D.Y.'s best interest when it terminated dependency jurisdiction.

14

D.Y.'s best interest.  A short continuance—and possibly further sanctions for DCFS—would have remedied the issue and permitted the court to fully exercise its discretion.[7]

The second and more compelling reason the court abused its discretion by denying the request for a continuance is the lack of notice to D.Y. and grandmother that dependency jurisdiction might be terminated at the hearing.  Although both were served with notice of the hearing in accordance with section 295, the notice and status review report indicated that DCFS recommended continuing the dependency.  At the previous hearing, in June 2017, neither DCFS nor the court raised the issue of terminating jurisdiction.  The last time it had been raised was a year earlier, in December 2016, when the court said it "may terminate [dependency jurisdiction] at the next RPP," in June 2017.  The juvenile court did not do that, nor did it give any indication that it planned to revisit the issue in December 2017.  D.Y.'s counsel apparently was caught off guard when the court raised the issue during an off-the-record conversation, the contents of which were not transcribed or available for our review.  The court allowed D.Y.'s counsel to be heard on the drastic change briefly, but neither grandmother nor D.Y. was afforded that opportunity.  In the context of this long-running case, in which maintenance of the status quo had been the norm for 16 years and remained the recommendation of DCFS, it was an abuse of discretion for the juvenile court to abruptly terminate jurisdiction without alerting all of the interested parties to that possibility.

---

[7]The juvenile court previously assessed sanctions against DCFS three times, in escalating amounts, for failing to timely file status reports.

15

## DISPOSITION

The order of the juvenile court is reversed.  The matter is remanded for further proceedings consistent with this opinion.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.


We concur:



WILLHITE, ACTING P.J.



MICON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.