Filed 9/12/23  In re E.K. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re E.K. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D082144 |
| Plaintiff and Respondent, | (Super. Ct. Nos. NJ57474A-B) |
| v. | |
| R.R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Nadia J. Keilani, Judge.  Reversed and remanded with directions.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

R.R. (Mother) appeals from orders terminating parental rights to her children, E.K. and D.K. (collectively, the children) at the permanency planning and selection hearing pursuant to Welfare and Institutions Code[1] section 366.26.  On appeal, Mother contends, and the San Diego County Health and Human Services Agency (Agency) concedes, the Agency did not comply with its inquiry duties under the federal Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.), and thus the juvenile court abused its discretion in finding that ICWA did not apply.  We accept the Agency's concession, conditionally reverse the orders terminating Mother's parental rights, and remand for the limited purpose of compliance with ICWA and its related statutory provisions.  We reject, however, Mother's other contention that the juvenile court prejudicially erred by denying her request for a continuance of the section 366.26 hearing.  The orders are otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *Events Leading to Dependency*

In May 2021, Mother and the children were living in a hotel room funded by a program to help them obtain housing.  In mid-May, police responded to Mother's hotel room to investigate allegations of domestic violence.  Mother reported that the children's father (Father)[2] punched her in the face and strangled her in the presence of the children.  Mother admitted

---

[1]    Unspecified statutory references are to the Welfare and Institutions Code.

[2]    Father is not a party to this appeal and is discussed only when relevant.

there was methamphetamine and fentanyl in the hotel room, and that she was "smoking every day." An officer described Mother as "erratic, nervous, and crying," and he believed she was experiencing symptoms of drug withdrawals. Father was the subject of a criminal protective order that prohibited him from having negative or unsupervised contact with the children.

Three days later, Mother told a hotel manager that she was experiencing withdrawals and feeling suicidal. The hotel manager spoke with an Agency social worker and reported that Mother said, "I need help, I need treatment, and I don't feel [the children] are safe with me." Mother told the Agency social worker, "I need help. I am suicidal, my husband beat me up the other day and I need treatment." A medical team arrived at the hotel and took Mother to a hospital, where she was placed under a psychiatric hold. (§ 5150.) The children were taken to Polinsky Children's Center.

Following Mother's hospitalization, hotel staff informed the Agency that Mother had been leaving the children, who were three and six years old, in the hotel room unsupervised. They observed her leave the children alone and return late at night with a male companion. Mother called the front desk and asked for alcohol and Benadryl because she was "withdrawing from drug use," and she told the staff they needed to watch the children. The staff reported they had been providing food and toys to the children. Mother admitted she was using "methamphetamine, fentanyl, heroin, and Xanax" in her hotel room.

The day after Mother was placed on a psychiatric hold, the Agency filed dependency petitions on behalf of each child pursuant to section 300, subdivision (b)(1). The petitions alleged the children were at substantial risk of serious physical harm or illness because of Mother's drug use and her

3

mental health crisis. At the detention hearing, the court made prima facie findings that the children fell within the jurisdiction of the juvenile court and detained the children in out-of-home care.

A contested jurisdiction and disposition hearing took place in August 2021. The juvenile court made true findings on the petitions and declared the children dependents of the juvenile court. Reunification services were offered to both parents and they were permitted to have supervised visitation with the children. The Agency's case plan required Mother to complete counseling, psychotropic medication monitoring, parenting classes, and substance abuse treatment and drug testing.

## II.

### *Reunification Period*

During the initial reunification period, Mother was twice admitted to a psychiatric hospital. During her second hospitalization, the Agency reported she was "detoxing" from methamphetamine, heroin, and fentanyl use. She was released from the hospital to an in-patient treatment program where she participated in individual and group counseling and had weekly visitation with the children.

While at the in-patient program, Mother enrolled in an "off[-]campus" medically assisted treatment program. Mother's roommate disclosed to her counselor that Mother used methamphetamine and fentanyl while at the off-campus program. Upon learning of her alleged drug use, Mother's counselor required her to drug test. Mother tested positive for methamphetamine and she was discharged from the in-patient program.

After leaving the drug treatment program, Mother failed to maintain consistent contact with the Agency. Mother's social worker documented that she had 13 different telephone numbers for Mother, and that her

4

communication was sporadic. For example, she sent her social worker a message claiming that her spinal cord was infected and required surgery, and four days later she told the social worker that she had travelled to Florida. Although Mother admitted she was struggling with substance abuse, she informed the Agency that she did not intend to complete a substance abuse treatment program. She also failed to start her parenting classes or participate in counseling or mental health treatment.

Meanwhile, the children were placed together in the same resource home. Their caregiver reported that Mother maintained inconsistent communication with the children, missing 51 of 75 scheduled calls. The Agency referred Mother to a family visitation center to establish a visitation schedule, but the referral was closed when she repeatedly failed to show up or return the facility's phone calls. Once a visitation schedule was established, the Agency documented their observations of three supervised visits between Mother and the children during this reunification period. The social worker observed that their visits were positive and Mother appropriately engaged with the children.

In a report prepared for the 12-month review hearing, the Agency recommended that the juvenile court terminate Mother's reunification services. The Agency reported that Mother had not completed any reunification services, including substance abuse and mental health treatment, counseling, or parenting classes, and that she failed to maintain contact with her social worker. According to the Agency, Mother was not truthful regarding her participation in substance abuse treatment; she claimed she was receiving services from a specific mental health provider, but the Agency confirmed she received no such services.

5

At the 12-month review hearing, the juvenile court found returning the children to Mother's care would create a substantial risk of detriment to their physical or emotional well-being, and that there was no substantial probability that the children would be returned to her care within 18 months of the initiation of dependency proceedings. The court terminated reunification services and set the matter for a section 366.26 hearing.

III.

*Section 366.26 Hearing*

The juvenile court conducted the section 366.26 on March 23, 2023. The Agency submitted the section 366.26 report and two addendum reports into evidence without objection. Mother did not present affirmative evidence at the hearing, nor did she cross-examine the Agency social worker who was available to provide testimony.

The section 366.26 report described the children's progress in their foster home. The children were placed together in the same home shortly after they were removed from Mother's care in May 2021, and they had remained with their caregivers throughout the dependency case. E.K. was diagnosed with autism spectrum disorder, and he required additional services and therapy to meet his needs. D.K. did not have any developmental delays, but required counseling to address behavioral issues in which he was observed hitting, pushing, and punching others. The caregivers ensured the children consistently received the services they needed to help with their development and behavioral needs.

The caregivers, who had provided foster care for over 12 years and specialized in the care of children with special needs, expressed a strong interest in pursuing the children's adoption. The Agency opined that the children would benefit from the "stability and consistency in the care they

6

have had for over a year" with the caregivers. Thus, the Agency recommended that the juvenile court select a permanent plan of adoption.

In their closing argument, Mother's counsel asked the court to select a "lesser permanent plan" than adoption. Counsel asserted the beneficial parent-child relationship exception to adoption was applicable, noting that the children lived the entirety of their lives in Mother's care prior to the dependency case. Counsel argued Mother had maintained regular visitation and contact with the children, aside from instances in which visitation was affected by Mother's medical issues. Counsel argued the benefits of adoption did not outweigh the detriment of terminating Mother's parental rights because of the strength of Mother's bond with the children.

The juvenile court found, by clear and convincing evidence, that the children were likely to be adopted if parental rights were terminated. The court then addressed the beneficial parent-child relationship exception to adoption under section 366.26, subdivision (c)(1). It noted that Mother had *not* maintained consistent in-person and telephonic communication with the children and that she repeatedly failed to show up to their scheduled visits. On days when Mother did not show up for visitation, E.K. exhibited harmful behavior in which he "kicked staff, screamed, and threw chairs." However, the court acknowledged that when Mother did have visitation with the children, the visits were appropriate and the children appeared to enjoy them. Nonetheless, the court found that Mother and the children did not share a "significant positive emotional relationship," namely due to the "inconsistency of the parents in their children's lives." The court found that any potential detriment arising from the termination of the parental relationship would be mitigated through therapeutic intervention, and the

7

consistent care, love, and support the children were receiving from their caregivers.

Accordingly, the juvenile court found "the benefits of stability and permanency, which adoption provides, far outweigh the benefit of maintaining what is at best an inconsistent relationship with [the parents]." It concluded that none of the statutory exceptions enumerated in section 366.26, subdivision (c)(1), including the beneficial parent-child relationship exception, were applicable. The court terminated Mother's parental rights and declared the children free from her custody and control.

## DISCUSSION

## I.

*The Juvenile Court Did Not Abuse its Discretion*
*by Denying Mother's Request for a Continuance*

Mother contends the juvenile court abused its discretion by denying her request to continue the section 366.26 hearing. According to Mother, she established good cause to support her request, and a continuance was not contrary to the children's best interests. Additionally, she argues the juvenile court's error was prejudicial because it is reasonably probable that her testimony would have compelled a more favorable result. We disagree.

Nearly two years before the section 366.26 hearing, in July 2021, Mother reported to the Agency that she was diagnosed with cancer and was discussing treatment options with her medical providers. The record does not include documentation of her diagnosis, or any information related to her treatment plan. Although Mother testified at the 12-month review hearing and discussed her substance abuse and mental health issues, she did not mention a cancer diagnosis or any related medical issues or procedures.

After Mother's reunification services were terminated at the 12-month review hearing, the court scheduled the section 366.26 hearing for

8

January 25, 2023, as an "appearance hearing." At the "appearance hearing," the juvenile court set a contested section 366.26 hearing for February 22, 2023. Although Mother was present, she did not mention any upcoming medical procedure to the court.

On February 22, 2023, Mother appeared telephonically and requested a continuance of the section 366.26 hearing. Her counsel represented that Mother was feeling ill, and that she wished to be present for the hearing to testify in person. The juvenile court found good cause to continue the hearing to March 23, 2023. Once again, Mother did not mention any upcoming medical procedures.

On March 23, 2023, Mother was not present for the hearing and her counsel requested another continuance. Her counsel proffered the following in support of the continuance request: "[Mother] advised me that they have a current medical procedure in the time frame of trial is scheduled to take place today. I don't have any further information."

The Agency, as well as counsel for the children, objected to the continuance. The children's counsel informed the court that the delays in the court proceedings were "affecting the children." They argued that Mother "has been inconsistent with visits and [the children were affected by] the ongoing continuances and the delaying of this case[.]" E.K.'s therapist reported he was having behavioral issues at school because of inconsistent visitation with the parents, and that further delay would be detrimental to the children.

After argument from the parties, the court found that a continuance would be "contrary to the children's best interest[s]." The court noted that it previously granted Mother's continuance request based on an unspecified illness, and that Mother was aware of the time and date of the section 366.26

9

hearing "for some time." The court did not find good cause to continue the hearing and denied Mother's request.

"We review the juvenile court's decision to deny a continuance for abuse of discretion. [Citation.] 'Discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice.' " (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.) Continuances of hearings in dependency proceedings are generally discouraged. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) In dependency cases, the juvenile court may not grant a continuance "that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(1)–(2).)

Here, Mother's second request to continue the section 366.26 hearing did not comply with the requirements set forth in section 352, subdivision (a)(3), that required her to file her request in writing two days prior to the hearing. (§ 352, subd. (a)(3) [to request a continuance in a dependency proceeding, "written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."].) Instead, her counsel requested a continuance orally and on the date of the hearing. Nevertheless, the juvenile court considered the merits of her continuance request and found that she did not present good cause.

We conclude the juvenile court's finding is supported by the record. Mother was personally present when the section 366.26 hearing was continued to March 23, 2023 at her request, and yet she made no mention of any upcoming medical procedure. To the extent that the procedure was an emergency, Mother's counsel did not provide any information regarding the nature of the proceeding or how long her procedure would delay the proceedings. While we understand, as Mother notes in her opening brief on appeal, that she previously disclosed a cancer diagnosis, there is no evidence in the record to suggest the medical procedure was related to this diagnosis.

Importantly, the record supports the juvenile court's finding that an additional continuance of the section 366.26 hearing would be contrary to the children's best interests. The children's counsel explained that the delays and inconsistent visitation with Mother were creating behavioral issues for E.K. The Agency's reports also documented the negative effect of Mother's inconsistent visitation and contact on the children. On the other hand, the Agency's reports demonstrated that the children benefitted greatly from the consistency and stability offered by the children's prospective adoptive family. The juvenile court reasonably concluded that further delay in the selection of a permanent plan was contrary to the children's best interests. We therefore perceive no abuse of discretion in the juvenile court's decision.

But even assuming the juvenile court did err in denying Mother's request for a continuance, Mother has not met her burden of demonstrating that the error resulted in a miscarriage of justice requiring reversal of the section 366.26 order. (*In re Celine R.* (2003) 31 Cal.4th 45, 59–60 (*Celine R.*) ["The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.)"].) The Supreme Court has applied the "miscarriage of justice"

11

standard to dependency matters and interpreted this standard "as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error." (*Celine R.*, at pp. 59–60*,* citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Mother contends she was unable to present "testimonial evidence critical to her case and favorable to her position" because the juvenile court conducted the hearing in her absence. But she fails to explain how it is reasonably probable that her testimony would have influenced the juvenile court's decision. She asserts only in a conclusory manner that the court's error was prejudicial because her testimony would have allowed the court to "consider Mother's testimony, judge Mother's credibility firsthand, and to receive critical information directly relevant to the court's obligation to consider the parent-child relationship[.]"

However, the juvenile court had ample evidence within the Agency's reports supporting its finding that the beneficial parent-child relationship exception did not apply. The Agency documented Mother's repeated failure to maintain consistent visits and communication with the children, and the negative effect of her inconsistency on the emotional well-being of the children. This evidence supported the juvenile court's findings that Mother failed to maintain regular visitation and contact with the children, and thus their relationship did not rise to "significant positive emotional relationship." The juvenile court's findings, which Mother does not effectively challenge, foreclosed application of the beneficial parent-child relationship exception. (See *In re Caden C.* (2021) 11 Cal.5th 614, 631 [the beneficial parent-child relationship exception requires the parent to prove: "(1) *regular visitation and contact*, and (2) a *relationship*, the continuation of which would benefit

12

the child such that (3) the termination of parental rights would be *detrimental* to the child"].)

Mother makes no showing that her testimony would have affected the juvenile court's findings, particularly considering that she failed to maintain regular contact and visitation with the children for the nearly two years of the dependency case. Although we do not find any abuse of discretion by the juvenile court in denying Mother's request for a continuance, we conclude any error was harmless.

## II.

### *A Limited Remand for ICWA Compliance is Appropriate*

During the Agency's initial investigation, Mother reported to have Native American ancestry from the "Blackfoot tribe." Mother also informed the juvenile court directly that she was, at one point, a "registered member" of the tribe. In response to Mother's proffers, the Agency mailed and faxed an "informal inquiry letter" to the Blackfeet tribe. The Agency received letters from the Blackfeet tribe stating the children were not members of the tribe, eligible for enrollment, or domiciled on their reservation. However, the letters did not indicate that the tribe evaluated whether Mother was eligible for tribal membership.

The record also fails to demonstrate that neither the Agency nor the juvenile court asked Father about potential Native American ancestry at any time during the dependency case. Although the Agency had contact with two paternal aunts and the paternal grandfather, the record does not indicate they were asked about Native American ancestry.

Mother contends the Agency failed to comply with its inquiry duties pursuant to ICWA for several reasons. First, she contends the juvenile court failed to instruct the parents to file the necessary documentation attesting to

13

their Native American ancestry. Next, she contends the Agency failed to discharge its inquiry duties to ask all relevant persons about the children's potential Native ancestry. Finally, Mother asserts the Agency did not provide sufficient evidence to the court of its inquiry of the Blackfeet tribe, and relatedly that the juvenile court erred by finding the Agency complied with its inquiry duties.

The Agency concedes error and agrees that a limited remand is appropriate so the Agency may perform its requisite ICWA inquiries and submit its findings to the juvenile court. Specifically, the Agency agrees there was no ICWA inquiry made of Father who was present at multiple hearings, or of two paternal aunts or the paternal grandfather for whom the Agency had contact information. The Agency also agrees that Mother claimed to have "Blackfoot ancestry," and although the Agency made an informal inquiry with the Blackfeet tribe, the record does not indicate whether the Agency included Mother's demographic information in its letter. The Agency also failed to submit their inquiry letter with the Blackfeet tribe to the juvenile court.

We accept the Agency's concession as proper and conclude the juvenile court's ICWA findings were not supported by substantial evidence. (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57 ["We review the trial court's [ICWA] findings for substantial evidence."].) Thus, we conclude a limited remand is appropriate so the Agency may perform its requisite ICWA inquires and submit its findings to the juvenile court. We therefore conditionally reverse the orders terminating Mother's parental rights with a limited remand for the Agency to comply with ICWA and section 224.2.

14

## DISPOSITION

The juvenile court's orders terminating Mother's parental rights are conditionally reversed. The matter is remanded to the juvenile court with directions that the Agency comply with the inquiry provisions of ICWA and section 224.2. If, after Agency compliance with ICWA and section 224.2, the juvenile court finds that no ICWA notice is required to be given, the orders terminating Mother's parental rights shall be reinstated. If, after compliance with section 224.2, the juvenile court finds that ICWA notice is required, the Agency shall comply with its ICWA notice obligations and the juvenile court shall proceed accordingly.

DO, J.

WE CONCUR:


DATO, Acting P. J.


RUBIN, J.

15