Filed 4/1/26  In re V.V. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re V.V., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G065839 |
| Plaintiff and Respondent, | (Super. Ct. No. 24DP1278) |
| v. | O P I N I O N |
| S.R., | |
| Defendant and Appellant; | |
| C.V., | |
| Defendant and Respondent. | |

Appeal from orders of the Superior Court of Orange County, Adrianne E. Marshack, Judge. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant S.R.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent Orange County Social Services Agency.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Respondent C.V.

No appearance for the Minor.

\*          \*          \*

Following a jurisdiction and disposition hearing, the juvenile court found the child, V.V., came within its jurisdiction under Welfare and Institutions Code section 300,[1] removed the child from S.R. (Mother), and placed the child with C.V. (Father), who lives in Arizona. At a subsequent hearing—for the six-month review and for Mother's and Father's requests to change an order—Mother's attorney requested a continuance. The court denied the request for continuance, heard further arguments, and ultimately terminated its jurisdiction over the child and issued exit orders. Among other things, the court ordered physical custody to Father and joint legal custody to Mother and Father, and it granted Mother certain visitation in Arizona. On appeal, Mother argues the custody orders must be reversed because the court abused its discretion in denying the request for continuance. We conclude the

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

court did not abuse its discretion in denying the requested continuance, and even if it erred, the error was harmless. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Orange County Social Services Agency (SSA) reported the family came to its attention in October 2024 after V.V., who was then six years old, disclosed to his maternal grandmother that Mother had beat him up and he was observed to have bruises. The maternal grandmother contacted the police, who transported V.V. to the emergency room. At the time, Father did not reside with V.V.; he resided in Arizona with his wife and other children. After V.V. was taken into protective custody, he was placed with a maternal aunt.

In October 2024, SSA filed a petition asserting V.V. came within the jurisdiction of the juvenile court under section 300, subdivisions (a), (b)(1), (g), and (i). Among other things, the petition alleged Mother physically abused V.V. and, on or around October 13, 2024, Mother struck the child "repeatedly on his body with an open hand," "grabbed the child by the neck and strangled the child, causing the child not to be able to breathe and to possibly lose consciousness," and "bit the child." The petition further alleged "the child had extensive bruising to his face and body" on October 14, 2024, and Mother had beaten the child on prior occasions but this was the worst incident. The petition also alleged Father resides in Arizona and has not been involved in V.V.'s life. It further alleged that, other than approximately two months when V.V. stayed with Father, Father's level of involvement in V.V.'s life is unknown. The petition alleged Father "was aware and/or had reason to know that the child . . . was at substantial risk of being physically and/or emotionally harmed by [Mother], and he failed to protect the child."

3

On November 1, 2024, the office of the public defender was appointed to represent Mother. Mother subsequently retained new counsel, and on November 21, 2024, attorney Matt Koohanim appeared on her behalf. Thereafter, the record reflects Koohanim consistently appeared on behalf of Mother in the juvenile court until the hearing on August 4, 2025, which is discussed further below.

The jurisdiction and disposition hearing occurred over several days in December 2024 and early 2025. Father and a social worker testified; Mother did not. The juvenile court admitted into evidence SSA's reports. The court found the allegations of the petition, as amended by interlineation,[2] to be true by a preponderance of the evidence to bring the child within its jurisdiction under section 300, subdivisions (a), (b)(1), and (i). The court also declared V.V. to be a dependent of the court under section 360, subdivision (d). Additionally, the court found section 361, subdivision (c)(1), applied and removed V.V. from Mother's custody. It found vesting custody with Father would be in the child's best interest. The court ordered V.V. to be placed with Father. It also ordered Father to bring the child from Arizona to California to visit Mother once a month. The court scheduled a six-month review hearing for August 4, 2025.

In June 2025, Mother and Father each sought to change the court's order. Father sought to have the case closed or, alternatively, to change Mother's visits to phone or video.[3] Mother requested Father be

---

[2] The juvenile court struck the allegations under section 300, subdivision (g).

[3] Father also filed an ex parte application asking that he not be required to travel with V.V. to California for the visit in June.

ordered to bring V.V. to California for additional visitation and for her visits to be liberalized to unmonitored with a step up plan for overnight visitation.[4] At a July 10, 2025 hearing regarding Mother's and Father's requests, the juvenile court found a prima facie showing had been made and scheduled an evidentiary hearing for August 4, 2025, which was when the six-month review hearing was scheduled.

On August 1, 2025, Koohanim filed a request to appear remotely. Mother states Judge McCartney "issued a written order directing [M]other's counsel to appear in person."[5]

In its status review report for the August 4, 2025 hearing, SSA recommended terminating the dependency with exit orders. Among other additional information and updates, SSA noted V.V. has continued to reside with Father and was observed to have a good relationship with Father, the stepmother, and his half-siblings. SSA said Father "has demonstrated the ability to meet the child's needs on a consistent basis, and to keep him safe from further harm." SSA reported Mother had participated in all of the case plan services and had been consistent with her visits. SSA also stated, although Mother "has actively participated in the case plan services, [Mother's] service providers have reported 'minimal engagement and gained insight' as to the [SSA's] involvement. Although [Mother] reported having learned new parenting skills and reported understanding that

---

[4] Mother also filed a supporting declaration and exhibits.

[5] Father agrees Koohanim's request was denied. Both Mother and Father cite to a page of the clerk's transcript that appears to be an order requiring counsel to appear in person, but it does not appear to be signed. In any event, whether the juvenile court entered an order denying Koohanim's request to appear remotely does not change the outcome of this appeal.

physical/corporal punishment is not appropriate, [Mother] will sometimes still have 'outbursts' with the [social workers] and has reported, 'I don't even know why this is all happening. Everyone always takes [Father's] side.'"[6] SSA also reported on Mother's drug test results, which included repeatedly testing positive for THC.

On August 4, 2025, attorneys for SSA, Father, and the child appeared at the hearing. Father was present via zoom, but Mother was not present.[7] An attorney named Gary Harrison, appearing remotely, stated he was "specially appearing for Mr. Koohanim, attorney for [Mother]."[8] Harrison requested a continuance, stating he had food poisoning and was "just in my car at the urgent care right now."[9] Harrison further stated, "[t]hat way we can also have a full hearing on the 388 motion," and if there was no continuance, he "would ask to be heard as to the family law order."[10]

---

[6] SSA provided additional details from the services in which Mother had participated. Among other things, SSA noted Mother's therapist had reported, in May 2025, Mother "'has a very short fuse and she's not taking therapy very seriously,'" and although Mother is participating, "'she is not gaining insight.'"

[7] Father's counsel noted she had seen Mother in the hallway prior to lunch. The court, however, noted Mother was not currently present, and before the hearing began, SSA's counsel checked the hallway to see if Mother was there.

[8] Mother notes "the record shows that Mr. Harrison was in the same law firm as Mr. Koohanim."

[9] Father opposed the request to continue. SSA noted it submitted to the court as to whether there was good cause to continue.

[10] Koohanim also had signed, on August 4, 2025, a declaration in support of a motion to disqualify Judge McCartney pursuant to Code of Civil

Harrison did not elaborate on what he would want to present at a "full hearing" that he could not present if appearing remotely; nor did he assert what, if any, witnesses he wanted to call. Harrison also did not provide any explanation regarding when he first became sick or why Koohanim, Mother's counsel of record, was not appearing. When the juvenile court asked if Mother was opposed to closing the case, Harrison responded, "[h]er concern is more with the custody arrangements" and "[s]he wants 50/50 custody." The court denied the motion to continue. The court noted it "sympathize[d] with you having food poisoning, but there are multiple people in your office, though, that could handle this case." The court further stated that, although they were apparently alerted earlier in the morning that counsel had food poisoning, counsel was only now going to the doctor and "[m]aybe this is something that should have been handled more quickly."

The juvenile court admitted into evidence SSA's status review report. Regarding Mother's request for "50/50" custody, the court found it would not be in the child's best interest at this time. The court noted it was very concerned about Mother's lack of insight, which was noted in the report. The court also heard further arguments from the attorneys. Harrison again argued for "50/50" custody and, failing that, joint legal custody. Harrison further argued: "As far as visitation, we would be requesting at least overnights. Mother would have to go to Arizona over the weekend. Mother's visits have been going well. She's been making some progress on her case plan, and she has a strong bond with the child."

Procedure section 170.6. At the August 4, 2025 hearing, Harrison asked to be heard on the Code of Civil Procedure section 170.6 motion if the juvenile court denied the motion to continue, but Judge Marshack noted she was a different judge.

7

The court ultimately ordered the child dependency proceedings terminated and awarded physical custody to Father and joint legal custody to Mother and Father. It also granted Mother visitation of eight hours a day on a Saturday and Sunday once a month to occur in Arizona, with the specific weekend to be arranged between the parties, and three telephone calls per week.

DISCUSSION

"When terminating jurisdiction over a dependent child, section 362.4 authorizes the juvenile court to issue 'an order determining the custody of, or visitation with, the child.'" (*In re Reyna R.* (2026) 118 Cal.App.5th 486, 492.) "In making a custody or visitation order under section 362.4 (commonly referred to as an 'exit order'), the court's "'focus and primary consideration must always be the best interests of the child.'"" (*Ibid.*) On appeal, Mother does not assert the juvenile court erred in terminating jurisdiction; nor does she argue the court abused its discretion in setting the exit orders if it correctly denied the continuance.[11] Instead, Mother argues the juvenile court abused its discretion in denying the request for continuance made at the August 4, 2025 hearing, contending she would have achieved a better result had the court granted the continuance.[12] We conclude the juvenile court did

---

[11] The juvenile court referred to proceeding under section 364 for terminating its jurisdiction. Neither Mother nor Father has argued the juvenile court applied an incorrect statutory provision to terminate its jurisdiction and issue exit orders.

[12] On appeal, SSA states, "[a]s SSA did not oppose the continuance request now at issue, Mother's claims of prejudice primarily involve details as to the time and manner of visits . . . , and the case is no longer under dependency jurisdiction, SSA will not oppose Mother's current appeal."

8

not abuse its discretion in denying the request for continuance, and even if it should have granted a continuance, the error was harmless.

"Continuances are discouraged in dependency cases." (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) Under section 352, subdivision (a), "[u]pon request of counsel for the parent, . . . the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Id.*, subd. (a)(1).) Additionally, "[c]ontinuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (*Id.*, subd. (a)(2).) "We review the denial of a continuance for abuse of discretion." (*In re Giovanni F.*, at p. 605.)

Here, we conclude the juvenile court did not abuse its discretion in denying the continuance.[13] Other than asserting he had food poisoning and was in his car at an urgent care facility, Harrison provided no further details regarding his illness, such as when he first became ill, why he did not seek a continuance earlier, or the severity of his illness. Harrison also noted a continuance would allow "a full hearing on the 388 motion," but again, provided no further explanation of what he wanted to present to the court

---

[13] In her opening brief on appeal, Mother asserts no party objected in the juvenile court to the requested continuance. In her reply brief, Mother concedes that assertion is incorrect; Father's counsel opposed a continuance.

9

that he could not then present. Notably, Mother did not attend the hearing, and Harrison did not provide any explanation for Mother's absence or argue he needed a continuance to present her testimony (or the testimony of any other witness). Moreover, Harrison provided no explanation for why Koohanim—who had consistently appeared at prior hearings for Mother, had asked to appear remotely at the hearing (which, according to Mother and Father, had been denied), and had filed a declaration in this case pursuant to Code of Civil Procedure section 170.6 the same day as the hearing—was not present for the hearing.[14] On these facts, we cannot find the court abused its discretion by denying the request for a continuance.

Mother argues this case is analogous to *In re D.Y.* (2018) 26 Cal.App.5th 1044 (*D.Y.*), and "a continuance was necessary to protect [M]other's right to a fair hearing." In *D.Y.*, the court placed the child under the legal guardianship of his grandmother when he was an infant, and it retained jurisdiction over the child for the next 16 years while conducting a review hearing every six months. (*Id.* at p. 1047.) At one of the hearings, the juvenile court terminated jurisdiction, despite a request by the child's counsel for a continuance. (*Id.* at pp. 1047–1048.) The appellate court concluded the juvenile court abused its discretion in denying the continuance request. (*Id.* at pp. 1056–1057.) The appellate court noted there was good cause for a

---

[14] Mother faults the juvenile court for noting another attorney in Harrison's office could have handled the case. According to Mother, she "needed an attorney who knew her case and could handle the evidentiary hearing," and "[a]ssigning the case at the last second to an attorney unfamiliar with the facts would be inconsistent with the right to counsel at the detention hearing and 'at all subsequent proceedings before the juvenile court.'" Mother's argument rings hollow, given that Harrison was specially appearing for the first time at the hearing and he offered no explanation why Koohanim was not present.

continuance because "the status report before the court was missing important information the social worker had indicated would be forthcoming." (*Id.* at p. 1056.) The appellate court further explained, "[t]he second and more compelling reason the court abused its discretion by denying the request for a continuance is the lack of notice to D.Y. and grandmother that dependency jurisdiction might be terminated at the hearing." (*Ibid.*) The appellate court stated, "[i]n the context of this long-running case, in which maintenance of the status quo had been the norm for 16 years and remained the recommendation of DCFS, it was an abuse of discretion for the juvenile court to abruptly terminate jurisdiction without alerting all of the interested parties to that possibility." (*Id.* at p. 1057.)

*D.Y.* is not analogous to this case, and Mother has not shown that there was a violation of her right to a fair evidentiary hearing. Unlike *D.Y.*, there is no dispute that Mother had notice of the hearing and that the juvenile court might terminate jurisdiction and issue exit orders. Indeed, SSA's report in advance of the hearing recommended the court terminate jurisdiction with exit orders. Moreover, as discussed, Harrison appeared and argued remotely at the hearing. Although Mother asserts she had a right to present evidence at the hearing and claims her counsel "indicated an interest in presenting additional evidence," Harrison did not assert there was any specific witness testimony or other evidence that he wanted to present but was unable to do so. Mother apparently was in the courthouse earlier in the day but did not attend the hearing. Mother offered no explanation for her absence from the hearing in the juvenile court.[15]

---

[15] Although Mother's opening brief stated "the reason she missed the afternoon calendar is unknown," her reply brief asserts "the more reasonable conclusion is that [M]other finally left the courthouse after

11

Mother also relies on *In re Dolly A.* (1986) 177 Cal.App.3d 195 (*Dolly A.*), but that case also is inapposite. In *Dolly A.*, criminal charges were brought against the father for lewd and lascivious conduct with his daughter, and child welfare proceedings also were instituted. (*Id.* at p. 198.) The father requested a continuance pending completion of his criminal trial, but the juvenile court denied the continuance, found the petition as amended to be true at the jurisdiction hearing, and placed the child in the mother's custody at the disposition hearing. (*Ibid.*) The appellate court noted the child was living with her mother at the time the father's request for continuance was denied, the juvenile court had "pointed to nothing which made a delay contrary to [the child's] interest," and "[a]bsent a finding of contrary interest, the court's decision to grant or deny the continuance was discretionary." (*Id.* at pp. 199–200.) The appellate court explained, "[i]n this instance, where denial of a continuance forced defendant to elect between giving up his right not to be deposed as a criminal defendant and his right to testify on his own behalf in the proceeding to deprive him of custody of his daughter, we find it was an abuse of discretion to deny the continuance. The risk of possible injury to [the child's] interests was relatively slight, whereas the infringement upon defendant's rights was a clear and serious danger." (*Id.* at p. 201.)[16]

learning that her retained counsel would not be coming, and would instead be asking for a continuance based on his illness." Harrison, however, did not provide this explanation to the juvenile court, and again, he did not state at the hearing that he wanted Mother to testify.

[16] Section 352, subdivision (a)(2) now provides, "neither a pending criminal prosecution nor family law matter shall be considered in and of itself as good cause" for a continuance. (*Ibid.*)

Here, Harrison's reason for seeking a continuance bears no similarity to the reason given in *Dolly A*. Mother has not argued the juvenile court's denial of a continuance threatened the constitutional rights of a criminal defendant. Instead, Harrison asked for a continuance during the hearing because he stated he was ill and was in his car at an urgent care facility.[17]

Mother asserts "[t]he denial of the continuance request was also counter to the juvenile court's previous order directing [M]other's counsel to appear in person." According to Mother, "[t]his order was intended to ensure that [M]other could confer with counsel, assist in planning a trial strategy, and testify if she chose to," but "none of these intended benefits could accrue" given her counsel's food poisoning. Given Mother's failure to appear at the hearing, this argument is unconvincing. Moreover, Koohanim, not Harrison, filed the request to appear remotely for the hearing. In any event, while there may be benefits in some situations to having both counsel and the client in person at a hearing, Mother does not advance developed argument with applicable case authority that both of them needed to attend in person for

---

[17] Mother asserts *Dolly A*. is similar because V.V. "had already settled into a stable placement with another parent, so the countervailing interests in section 352—requiring the juvenile court to give substantial weight to the child's need for stability and to avoid prolonged temporary placements—did not apply." Section 352, subdivision (a)(1), provides "that a continuance shall not be granted that is contrary to the interest of the minor." (*Ibid*.) But even if a continuance is not contrary to the interest of the minor, that does not obviate the need for a showing of good cause or prohibit the juvenile court from exercising its discretion. *Dolly A*. does not hold otherwise. (See *Dolly A., supra*, 177 Cal.App.3d at p. 200 ["Absent a finding of contrary interest, the court's decision to grant or deny the continuance was discretionary"].)

Mother to receive a fair hearing. Again, Mother did not attend the hearing, nor did Harrison assert he wanted Mother to testify.

Additionally, even if the juvenile court abused its discretion by not granting a continuance, we would conclude the error was harmless. Mother agrees harmless error review applies here, but she contends the purported error in denying the continuance was prejudicial because "[w]ith an evidentiary hearing at which [M]other's counsel could appear in person, present evidence, and cross-examine witnesses, it is reasonably probable that [M]other would have secured more favorable final exit orders." (See *In re Celine R.* (2003) 31 Cal.4th 45, 59–60 [noting "[t]he California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice'" and reversal is permitted "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error"].) Although Harrison argued for "50/50" custody at the hearing, Mother acknowledges on appeal that "[t]he juvenile court was correct in stating that [M]other's request for '50/50' custody was unrealistic given that [F]ather lived in a different state." Instead, Mother argues "less ambitious goals were achievable." Specifically, Mother argues she "could have secured an order directing [F]ather to continue transporting [V.V.] to California once a month to see her," "could have secured an order allowing her overnight visitation," and "could have secured an order granting her extended visitation during holidays or school breaks." (Boldface omitted)

Mother's arguments are unpersuasive. Given the circumstances here, we conclude it was not reasonably probable Mother would have obtained more favorable exit orders had a continuance been granted. At the hearing, the juvenile court explained it was very concerned about Mother's

14

lack of insight, as articulated in the report, and "most significantly, her therapist says that she's not gaining insight, and is kind of going through the motions in therapy." The juvenile court also noted the logistical challenges posed by the fact the parents lived in different states and found it was better for Mother's visitation to be in Arizona so V.V. could participate in extracurricular activities that may occur on the weekends. The court also explained it did not believe that overnight visits with Mother were in the child's best interests at the time. Mother speculates about what arguments and evidence might have been presented at a continued hearing, but Harrison was able to present arguments at the hearing on her behalf. Moreover, Harrison did not state at the hearing that there was any specific witness testimony or other evidence that he wished to present but could not. Mother's speculation about what might have been presented at a later hearing does not establish a reasonable probability of more favorable exit orders under the circumstances here.[18]

---

[18] For example, in support of her argument that she could have obtained overnight visitation, Mother asserts she "could have testified about her marijuana use and assured the juvenile court that she did not become intoxicated." Notably, Mother does not state she actually would have testified to that information. In any event, even if Mother would have appeared at a continued hearing and testified about the theoretical information she asserts in her appellate brief, there is no reasonable probability more favorable exit orders for Mother would have been obtained under the circumstances here.

## DISPOSITION

The orders of the juvenile court are affirmed.


GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.